IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

| | | |
|---|---|---|
| MARIA E. TAMAYO, § | | |
|    Plaintiff, § | | |
| § | | |
| VS. § | CIVIL ACTION NO. B-06-045 | |
| § | | |
| THE WESTERN & SOUTHERN LIFE § | | |
| INSURANCE COMPANY D/B/A § | | |
| WESTERN & SOUTHERN FINANCIAL § | | |
| GROUP A/K/A WESTERN & § | | |
| SOUTHERN FINANCIAL § | | |
| CORPORATION, § | | |
|    Defendant. § | | |

**MEMORANDUM AND ORDER**

Pending before the court is a Motion for Leave to File an Amended Complaint (Docket No. 6) filed by Plaintiff, Maria Tamayo ("Tamayo"). For the reasons stated below it, the motion is denied.

**I. Background**

On February 14, 2006, Tamayo filed her Original Petition against Defendant, The Western & Southern Life Insurance Company ("Western") in the 107th Judicial District Court in Cameron County, Texas, Cause No. 2006-02-779-A, claiming violations of the Texas Commission on Human Rights Act.[1] The factual basis of Tamayo's claims centered around alleged acts of discrimination and sexual harassment by Tamayo's supervisor, Juan Avila, during her employment with Western.

On March 20, 2006, Western removed the case to federal court pursuant to 28 U.S.C. §1441on the basis of diversity of citizenship. Tamayo is a citizen of the State of Texas and

---

[1] Codified under TEX. LABOR CODE §§ 21 and 22.

Western is a citizen of the State of Ohio. Tamayo did not file a motion to remand. On May 22, 2006, Tamayo filed a Motion for Leave to File An Amended Complaint (Docket No. 6), seeking to join as a defendant, Tamayo's supervisor, Juan Avila ("Avila"), a Texas citizen. The Amended Complaint added two new causes of action against Avila for civil assault and invasion of privacy. Tamayo's motion was not designated as opposed, nor did Tamayo include a Certificate of Conference as is required by Local Rules 7.1 and 7.2 of the Southern District of Texas. According to the docket sheet, the Clerk of the Court filed the First Amended Petition on May 22, 2006, even though at that time, leave had not been granted. The following day, on May 23, 2006, the Court, improvidently granted the motion to for leave.

On June 6, 2006, Western filed a Motion to Vacate the Order Granting the Motion for Leave (Docket No. 10), stating its opposition to the joinder of a non-diverse defendant in Tamayo's amended complaint. On June 7, 2006, the Court, based on the merits of Western's argument, the fact that the Motion for Leave was opposed, as well as Tamayo's failure to follow the Local Rules, granted Western's Motion to Vacate (Docket No. 11). On the same day, an Initial Pretrial Conference was held before Magistrate Judge John Wm. Black. The parties presented their arguments and the Court ordered Tamayo to file a brief regarding the propriety of the amendment and joinder of the non-diverse defendant, Avila. On June 16, 2006, Tamayo filed a Motion for Clarification (Docket No. 16), a Motion for Reconsideration on Plaintiff's Motion for Leave to File an Amended Complaint (Docket No. 17) and a Response to Western's Motion to Vacate (Docket No. 18).

## II. Legal Analysis

### A. Claims of the Parties

Western argues that Tamayo seeks to add a non-diverse defendant, Avila, and destroy the Court's subject matter jurisdiction. Western contends that Tamayo knew the identity and role of Avila as early as October 21, 2004, when Tamayo's counsel wrote a letter[2] to Tamayo's district manager, complaining of Avila's sexual harassment. Western states that Tamayo purposely chose to pursue a cause of action only against Western under the Texas Human Rights Commission Act (the "Act"). Western further argues that under the Act, only Tamayo's employer, Western, is a proper defendant, as only employers are liable for unlawful employment practices.

Tamayo argues that the basis for the amendment was only recently discovered and in support thereof offers Tamayo's life insurance premium statement[3] dated February 27, 2006, showing Avila as her account representative. Presumably, this newly discovered evidence relates only to the invasion of privacy claim and not the assault.

### B. Joinder of Non-Diverse Defendant After Removal

Once a responsive pleading has been filed in a case, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FED. R. CIV. P. 15. In cases that have been removed to federal court solely on the basis of diversity jurisdiction, Rule 15 must be read in conjunction with 28 U.S.C. § 1447(e). *Irigoyen v. State Farm Lloyds*, 2004 WL 398553 (S.D. Tex. Jan. 5,

---

[2] Defendant's Motion to Vacate, Docket No. 10, Exhibit A.

[3] Plaintiff's Response to the Motion to Vacate, Docket No. 18, Exhibit 2.

2004).  Section 1447(e) states that, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  *Id*.

Justice requires that the district court consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits.  *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).  These factors include: (1) whether the primary purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been diligent in requesting the amendment; (3) whether the plaintiff will be prejudiced if the amendment is denied; and (4) any other equitable factors present in the case.  *Id*.

## 1. Primary Purpose of Proposed Amendment

The first factor a district court must assess is whether the primary purposes of the proposed amendment is to defeat federal jurisdiction.  Regarding joinder of nondiverse defendants, courts within the Fifth Circuit frequently look at whether the plaintiff knew the identity of the party to be joined and the facts underlying the claim against that party when filing the original complaint. *See In re Norplant Contraceptive Prod. Liab. Litig*., 898 F. Supp. 429, 432 (E.D. Tex. 1995).

Tamayo states in her response that Avila's actions, which give rise to her invasion of privacy claim include, "Juan Avila's access to the private matters of the Plaintiff evidenced by the attached Exhibit 2 also support the injury suffered by Plaintiff."[4]  The Court assumes that Tamayo is making the argument that Avila, as Tamayo's current account representative on her

---

[4] Plaintiff's Response to the Motion to Vacate, Docket No. 18, p. 2, ¶4c.

insurance policy, continues to have access to Tamayo's personal and private information which constitutes a newly discovered invasion of privacy.  Tamayo argues that the facts which form the basis of privacy claim only became known as of May 4, 2006, as indicated by a time-and-date stamp of a fax machine on the top left hand corner of the renewal policy/premium statement (Plaintiff's Exhibit 2), which is addressed to Tamayo's personal residence.

The actual date of the policy statement is February 27, 2006, and indicates a renewal for a semi-annual policy.  Presumably, the previous policy statement would have been dated and received by Tamayo six months earlier in August of 2005, which is after Tamayo resigned but before the filing of the original lawsuit.  The date of the fax stamp is meaningless.  The fact that Tamayo's counsel may have received a faxed copy of the policy statement in May of 2006, does not change the fact that Tamayo became aware of Avila's position as her account representative as early as August 2005 and most recently as February 2006 when she received her policy renewal statement at her home.  All of the conduct forming the basis of Tamayo's invasion of privacy claim as set forth in  paragraphs 4a., 4b., and 4c. of her response, were known to Tamayo at the time of filing her original lawsuit.

Tamayo also states as the basis for the invasion of privacy claim that Avila was "asking intensely personal questions, making sexual inappropriate comments, and physically touching Tamayo repeatedly,"[5].  This conduct however, appears to relate to the assault claim.  In any event, these personal interactions, by their nature, had to have occurred during Tamayo's employment with Western, which ended February 14, 2005, exactly one year prior to the filing of her original state court petition.

---

[5]Plaintiff's Response to the Motion to Vacate, Docket No. 18, p. 2, ¶ 4a.

As for the assault claim, Tamayo alleges in paragraphs 5a., 5b., and 5c., that "Avila acted intentionally and/or knowingly in making intentional, unwanted, and unwelcome phycial contact with the Plaintiff's body". Again, these personal and physical interactions had to have occurred during Tamayo's employment, which ended February 14, 2005, exactly one year prior to the filing of her original state court petition. Tamayo certainly would have known about the unwanted contact by Avila which forms the basis of her assault claim, prior to the filing of the original lawsuit.

In addition, a letter from Tamayo's counsel to Mr. Tony Cortez, the District Manager of Western, dated October 21, 2004, indicates that Tamayo knew of Avila's conduct forming the basis of the assault and invasion of privacy claims. The letter reads as follows:

> Mr. Avila has consistently harassed our client and appears to have gone out of his way to create a hostile work environment for her. In the beginning of her employment, he would ask her out for drinks or to dinner and would also buy her gifts although it was apparent she was not interested in dating him. When he realized she would not budge from her refusal to go out with him, Mr. Avila began retaliating against her. This retaliation took the form of sabotaging, as well as attempting to sabotage, her job production. Mr. Avila has also verbally threatened her, implying that Ms. Tamayo has a job only because he allows it.

All of the conduct alleged by Tamayo which form the basis of her assault and invasion of privacy claims appear to have been known to Tamayo prior to the filing of the original lawsuit and therefore the delay in filing the motion for leave to add a non-diverse defendant appears to be solely to defeat the court's subject matter jurisdiction.

## 2. Diligence in Filing Amendment

The second factor to be considered by courts assessing post-removal joinder is the plaintiff's delay in bringing a motion for leave to amend a pleading to join nondiverse parties. *Hensgens*, 833 F.2d at 1182. A delay of two months after the filing of the original complaint or

almost thirty days after the notice of removal has been found dilatory. *See Phillips v. Delta Air Lines, Inc.*, 192 F. Supp. 2d 727, 729 (E.D. Tex. 2001).  In this case, Western filed its Notice of Removal on March 20, 2006.  Tamayo did not file her motion for leave until May 22, 2006, almost 60 days later.  Although Tamayo claims that the basis of the claims against Avila were not known until May of 2006, the analysis above reveals that Tamayo's bald assertion is not supported.

### 3. Prejudice

The third factor district courts have been instructed to consider is whether any prejudice to the plaintiff will result from a denial of the requested post-removal joinder. Here, no prejudice to Tamayo will result by denying the motion for leave to amend.  There is no indication that Tamayo will be unable to fully satisfy a future judgment in state court.  The statute of limitations has not run on the civil state law claims against Avila.  In addition, by Tamayo's own admission, the claims against Avila are separate and apart from the claims against Western, the employer, under the Act.  Tamayo states, "the claims against Juan Avila relate to his breach/invasion of privacy which he individually acted upon and individually participated in against Plaintiff."  Tamayo goes on to state that "the claims of civil assault by Juan Avila against the Plaintiff were individual actions by Juan Avila (which Defendant Western does not accept as being in his course of scope)".[6]

IT IS THEREFORE ORDERED that Plaintiff's Motion for Leave to File an Amended Complaint (Docket No. 6) be DENIED.

---

[6]Plaintiff's Response to the Motion to Vacate, Docket No. 18, p. 1-2, ¶ 1a., 1b.

DONE at Brownsville, Texas, this 20th day June, 2006.

                                            John Wm. Black
                                    United States Magistrate Judge